FILED

IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

2016 JUL 26  PM 1: 11

MIDDLE DIST.        
ORLANDO. FL

RACQUEL HYLTON, individually
and on behalf of all others similarly situated,

CASE NO.: 6:16-CV-1346-Orl-18KRS

CLASS ACTION

Plaintiff,

v.

EVERALBUM, INC., a Delaware Corporation

Defendant.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND DEMAND FOR JURY TRIAL

Plaintiff, Racquel Hylton, on behalf of herself and all others similarly situated, alleges the following:

### INTRODUCTION

1. Plaintiff Racquel Hylton, (hereinafter "Ms. Hylton" or "Plaintiff") individually and on behalf of all others similarly situated, brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Everalbum, Inc. (hereinafter "Defendant") in negligently and/or intentionally or willfully contacting Plaintiff on Plaintiff's cellular telephone(s) in direct contravention and violation of the Telephone Consumer Protection

Act, 47 U.S.C. § 227 et seq. (hereinafter "TCPA"), thereby invading Plaintiffs' privacy, through mobile text spam. .

2. The TCPA prohibits, among other practices, sending unsolicited text messages (or "SMS" messages) to cellular telephones without prior, express consent within the meaning of the TCPA. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §1331. This case involves a question of Federal law, 47 U.S.C. § 227, et seq. (TCPA). Damages and injunctive relief are available under 47 U.S.C. § 227(b)(3). Venue is proper in this District because Defendant engages in business in this district and a substantial part of the events or omissions giving rise to this claim occurred here.

## PARTIES

4. Ms. Hylton is a natural person who, at all times relevant herein, is and was a resident of Orange County, Florida. Ms. Hylton is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

5. Upon information and belief, Plaintiff alleges that Defendant is a Delaware corporation whose principal office is located at 1 Letterman Dr, Ste C3500, San Francisco, California, 94129, and whose registered agent for the service of process is Natalie Peel. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

6. Upon information and belief, Plaintiff alleges Defendant is a company that created and marketed an application, or "app", designed to, among other things, facilitate the storage and sharing of photos, and all times relevant herein Defendant conducted business in the State of Florida and in the County of Orange, including the conduct that gives rise to this complaint.

## THE TELEPHONE CONSUMER PROTECTION ACT

7. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. Consistent with its purpose, the TCPA regulates, among other things, the use of prerecorded messages and use of text or "SMS" messaging. The TCPA was designed to prevent calls like the ones described within this complaint and to protect of the privacy of citizens. "Voluminous consumer complaints about abuses of telephone technology...prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

9.  By enacting the TCPA, Congress made particular and specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243. § 7

10. To effectuate such findings, Congress found that, except in "emergency situations" or where the receiving party consents to such calls, "[b]anning...automated or prerecorded telephone calls...is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 at* 4 (N.D. Ill. Aug. 10, 2012)(citing Congressional findings on TCPA's purpose); *Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215 (S.D. Fla. 2014)(Same).

11. Specifically, Congress found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* At §§ 12-13. *See also, Mims, 132 S. Ct. at 744.*

12. Relevant to the present case, the FCC issued a declaratory opinion in June 2015 confirming, among other things, that 1) simply being on an acquaintance's contacts list does not amount to consent to robocalls from third-party applications downloaded by the acquaintance; 2) internet-to-phone text messages require consumer consent; and 3) text messages are "calls"

subject to the TCPA, reaffirming a previous declaratory opinion. _Rules & Regulations_

_Implementing the Tel. Consumer Prot. Act of 1991_, 30 F.C.C. Red 7961(2015) para. 2.

13. Additionally, the FCC issued a declaratory order in 2003 that clarified that messages that

serve a "dual purpose," i.e. both informational and marketing, are considered telemarketing

messages for the purposes of the TCPA. _Rules & Regulations Implementing the Tel._

_Consumer Prot. Act of 1991_, 18 FCC Red 14415 (2003).

14. Internet-to-phone text messaging is functionally equivalent to phone-to-phone text

messaging, which the FCC has already confirmed falls within the TCPA's protection. And

the potential harm is identical to consumers; unwanted text messages pose the same cost and

annoyance to consumers, regardless of whether they originate from a phone or the Internet.

_Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991_, 30 F.C.C. Red

7961(2015).

## FACTUAL ALLEGATIONS

15. Plaintiff fully incorporates by reference paragraphs 1-14.

16. Everalbum, Inc. offers consumers the ability to, among other things, store and share photos

located on mobile devices through its Application called "Everalbum".

17. Everalbum invites users to allow Everalbum to access its Contacts. Everalbum then sends an invitational text message advertising and soliciting users to download the Everalbum Application whose numbers it obtains from the Contacts of subscribers.

18. At no time did Plaintiff provide her cellular telephone number to Defendant through any medium.

19. On or about July 17, 2016, Defendant sent an unsolicited text message ("The Text") to Plaintiff at approximately 7:13 A.M. (EST), which read as follows (see following page):



(Sender name deleted for privacy issues).

20. The link in the text message, when selected, takes the user to an internet site at the link address asking the user to download the Everalbum Application as shown in the screenshot below:



21. The text message was an advertisement because it was material advertising the commercial availability or quality of any property, goods, or services, i.e. the Everalbum application. 47 C.F.R. § 64.1200(f)(1).

22. The text message was a telemarketing call because it was call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services--the Everalbum Application--which is transmitted to any person. 47 C.F.R. § 64.1200(f)(12).

23. The calling phone number listed in the text message received by Plaintiff is owned, upon information and belief, by a mass marketing company, Twilio Inc. Twilio allows users to programmatically send text messages and phone calls via its automated telephone dialing system. In fact, Twilio provides clients with a tutorial on effective mass, mobile marketing.[1]

---

[1] https://www.twilio.com/docs/tutorials/walkthrough/marketing-notifications/node/express#0 (Last accessed July 24, 2016).

24. Given the pervasive and prevalent usage of mass, mobile marketing that violates TCPA protections, as Defendant have done here, Twilio provides clients with warnings to not use their service in ways that violate the TCPA.[2] These warnings were ignored by Defendant.

25. Twilio uses automated dialers ("ATDS"), as defined by the TCPA, in order to engage in mass marketing. Twilio states several times that their system, used in this case by Defendant to send the text message herein, is an automated dialing system.[3]

26. Twilio was the platform that Defendant used as initiator of the text message in order to effectuate their scheme of sending unsolicited text messages.

27. Defendant was the initiator of the text message.

28. Alternatively, if Twilio initiated the text message, it did so as Defendant's agent. Factors that form said agency relationship include the following:

    a.   Defendant allows the Twilio application to access to information and systems that normally would be within Everalbum's exclusive control, including: access to detailed information regarding the sales messages for its products and services and access to the Everalbum customer information including Contact Lists;

---

[2] https://www.twilio.com/legal/aup (Last accessed July 24, 2016).

[3] *See, e.g.,* https://www.twilio.com/elements/voice-broadcasting; (Last Accessed July 24, 2016).

b. Twilio's application has the ability to access and use consumer information from Everalbum's sales or customer systems, as well as the authority to use Everalbum's trade name, trademark and service mark in the text messages;

c. Everalbum approved, wrote or reviewed Twilio's application text telemarketing copy; and

d. Everalbum knew (or reasonably should have known) that the text messaging performed with the Twilio service was violating the TCPA on Everalbum's behalf, and Everalbum failed to take effective steps within its power to cease that conduct.

29. The text message, described above, was unsolicited and unexpected by Plaintiff. Plaintiff, prior to the receipt of the the text message, had not provided any consent to be autodialed any text message to her mobile telephone number, nor had she provided her cellular telephone number to Defendant, nor had she had any prior established business relationship with Defendant.

30. Furthermore, Plaintiff's attorneys, in investigating the matter, have discovered numerous complaints regarding Defendant's conduct in sending solicitous and advertising text messages without the consent of the Called Party. The following image is merely one example among many:



[http://whocalledchecker.com/phone-number/4157671477](http://whocalledchecker.com/phone-number/4157671477) (Last Accessed July 23, 2016)(Names

edited for privacy).

31. Through this conduct, Defendant (1) initiated, or caused to be initiated, a call, as construed

    by the TCPA, to Plaintiff's cellular telephone regarding an unsolicited service via an

    "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and

    prohibited by 47 U.S.C. § 227(b)(1)(A) and (2).

32. The text message that Defendant initiated, or caused to be initiated, to Plaintiff's cellular

    telephone includes or introduces an advertisement or constitutes telemarketing, using an

    automatic telephone dialing system and made without the prior express written consent of

    the called party. 47 CFR §64.1200(a)(2).

33. Upon information and belief, and given the similarity between the text message delivered to Plaintiff and other text messages initiated by Defendants to consumers en masse, the text message delivered to Plaintiff was sent via an automatic telephone dialing system as that term is defined by the TCPA and interpreted by the Federal Communications Commission.

34. The equipment Defendant used to send the text message was an automatic telephone dialing system (ATDS) and autodialer in that they were equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. 47 C.F.R. § 64.1200(f)(2).

35. The text message was delivered as an Internet-to-phone text message to Plaintiff's wireless number via email or via a web portal and constitutes an ATDS. "We conclude that the equipment used to originate Internet-to-phone text messages to wireless numbers via email or via a wireless carrier's web portal is an "automatic telephone dialing system" as defined in the TCPA, and therefore calls made using the equipment require consent." Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd 7961 ¶ 111 (2015).

36. The telephone numbers Defendant called were assigned to a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

37. The telephone number Defendant called was assigned to numbers for which Plaintiff incurs

a charge as part of her cellular telephone bill for incoming calls pursuant to 47 U.S.C. §

227(b)(1) and as defined by the FCC.

38. The unsolicited text message constituted an invasion of privacy, as has been recognized by

courts throughout the United States. See, e.g., *Palm Beach Golf Center-Boca v. John G. Sarris,*

*D.D.S., P.A.,* 781 F.3d 1245 (11th Cir. 2015).

39. The text message also constituted a concrete harm in that it drained and depleted Plaintiff's

cell phone battery life, a harm recognized by courts throughout the United States. See, e.g.,

*Mey v. Got Warranty,* 2016 U.S. Dist. LEXIS 84972 (N.D. W.V. June 30, 2016)("In addition,

all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone

is also a tangible harm. While certainly small, the cost is real, and the cumulative effect could

be consequential.").

40. The text message also constituted a trespass to chattel, in that it was an electronic intrusion

onto a person's personal property as recognized by courts throughout the United States.

See, e.g., *Register.com, Inc. v. Verio, Inc.,* 126 F.Supp.2d 238, 249 (S.D. N.Y. 2000).

41. The text message was a call that was not for emergency purposes as defined by 47 U.S.C. §

227(b)(1)(A)(i), and for which Defendant did not receive prior, express consent, pursuant to

47 U.S.C. § 227(b)(1)(A).

42. The text message constituted a telemarketing and/or advertising call for which Defendants were required to, but did not, obtain prior, written, express, consent as a condition precedent to initiating the text message. As a result, Defendant, or its agent as described above, violated 47 U.S.C. § 227(b)(1) and (2) and 47 C.F.R. § 64.1200(a)(2).

43. Prior to initiating the text message, Defendant failed to comply with the procedures required by 47 C.F.R. §64.1200(d) in that Defendant initiated a text message for telemarketing purposes to without having instituted at least the minimum procedures required by minimum standards 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Defendant.

## CLASS ACTION ALLEGATIONS

44. Plaintiff fully incorporates by reference paragraphs 1-43.

45. Plaintiff brings this action on behalf of herself and all others similarly situated ("the Class").

46. Defendant sends unsolicited text messages without express, prior written consent and not pursuant to an ongoing emergency.

47. Plaintiff represents and is a member of the Class, consisting of:

> "All persons within the United States who received one or more text messages from Defendant without prior express consent and not pursuant to emergency purposes, between July 14, 2012, and the certification of this class."

48. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class at this time, but, upon information and belief, as well as the investigation of her attorneys, believes the number to be in the thousands or tens of thousands, and perhaps more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

49. Plaintiffs and the members of the Class were harmed by actions of Defendant in at least, but not limited to, the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their cellular telephones by using an unsolicited spam text message(s), thereby invading the privacy of Plaintiff and the Class members, depleting Plaintiff and Class members' cell phone battery, and trespassing on Plaintiff and Class members' chattel(s). Plaintiff and the Class members were thereby damaged.

50. This suit, on behalf of the Class, seeks damages and injunctive relief for recovery of economic injury only. This suit is not intended to procure recovery for personal injury and/or related claims. Plaintiff reserves the right to modify or expand the Class definition to seek recovery on behalf of additional persons as warranted through further investigation and discovery.

51. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits to both parties and to this Court. The Class can be specifically identified through Defendant's records, or through the records of Defendant's agent(s).

52. The commonality in questions of law and fact and the intersecting community of interests protected by the TCPA therein have been repeatedly established. The common questions of law and fact to the Class predominate over questions which may affect individual Class members, including, but not limited to, the following:

   a. Whether, within the four years prior to the filing of the Complaint, Defendant or its agents sent any unsolicited text message(s) to the Class (other than, as previously mentioned, any message made for emergency purposes or with the prior express consent of the called party, or any other statutory exception) using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

   b. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation;

   c. Whether Defendants owe Class members statutory damages for violating the TCPA;

   d. Whether Defendants violation of the TCPA was intentional;

e.  Whether Defendant and its agents should be enjoined from engaging in such

conduct in the future; and

f.  Whether Plaintiff and the Class are entitled to any other relief.

53. As someone who received at least one unsolicited spam text message from Defendant

without prior express consent, Plaintiff is asserting claims that are typical of the Class.

Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no

interests antagonistic to any other member of the Class.

54. Plaintiff and the members of the Class have all suffered irreparable harm as a result of

Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue

to face the potential for further harm.  Additionally, these violations of law will be allowed to

proceed without remedy and Defendant will thus likely continue such and substantially

similar illegal conduct, including pertaining specifically to Plaintiff and class.  Because of the

nature of individual Class member's claims, few, if any, Class members could afford to seek

legal redress for the wrongs complained of herein.

55. Plaintiff has retained counsel experienced in handling class action claims, as well as claims

involving violations of the TCPA.

56. A class action is the best method for the fair, efficient adjudication of this controversy.

Class-wide damages are essential to induce Defendant to comply with federal and state law.

The interest of Class members to individually control the prosecution of separate claims

against Defendant is small due to the minimal nature of the maximum statutory damages in

an separate or individual action alleging invasion of privacy through violation of the TCPA.

57. Management of these claims is likely to present significantly fewer difficulties than those

presented in many class claims.

58. Defendant has acted on grounds generally applicable to the Class, thus making appropriate

final injunctive relief and corresponding declaratory relief with respect to the Class as a

whole.

## COUNT I: VIOLATIONS OF THE TCPA 47 U.S.C. § 227 ET SEQ.

59. Plaintiff fully incorporates by reference paragraphs 1-42, 44-57.

60. The foregoing acts and omissions by Defendant and/or Defendant's agent(s) constitute

numerous and multiple violations of the TCPA, including but not limited to each and every

one of the above-cited provisions of 47 U.S.C. § 227 et seq.

61. As a result of Defendant's violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class are

entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant

to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief

prohibiting such conduct in the future.

## COUNT II: KNOWING AND/OR WILLFUL VIOLATIONS OF TCPA 47 U.S.C. § 227

63. Plaintiff fully incorporates by reference paragraphs 1-42, 44-57, 59-61.

64. The foregoing acts and omissions by Defendant and/or Defendant's agent(s) constitute numerous knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

65. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

66. Plaintiff and the Class are also entitled to and seek declaratory injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

### Count I: Violation of the TCPA, 47 U.S.C. § 227 Et Seq.

● As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

● Pursuant to 47 U.S.C. 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

● Any other relief the Court deems just and proper

### Count II: Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227 Et Seq.

● As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1),

Plaintiffs seek for themselves and each Class member $1,500.00 in statutory damages, for

each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

● Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future

● Any other relief the Court deems just and proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America,

Plaintiff demands her right to a trial by jury.

(Signature on next page)

By: _____ /s/ Jake Phillips _____
Jacob L. Phillips, Esq.
FBN: 0120130
Normand, PLLC
62 W. Colonial St., Ste 209
Orlando, FL, 32801
407.603.6031
jacob@ednormand.com

By: _____ /s/ Ed Normand _____
Edmund A. Normand, Esq.
FBN: 865590
Normand, PLLC
4551 New Broad Street
Orlando, FL 32814
407-603-6031
firm@ednormand.com
ed@ednormand.com